UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BASEEM SYED,<br><br>            Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE COMPANY,<br><br>            Defendant. | Case No.: 3:21-cv-1098-BEN-JLB<br><br>**ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[ECF Nos. 18, 19]** |

      Plaintiff Baseem Syed is suing Defendant Metropolitan Life Insurance Company ("MetLife") for Defendant's failure to pay long-term disability ("LTD") benefits under the terms of Policy 98139-G (the "Plan"). The parties each moved for summary judgment under Federal Rule of Civil Procedure 56 (ECF Nos. 18, 19). Having carefully considered the parties' arguments, the Administrative Record, and the terms of the Plan, the Court GRANTS Plaintiff's motion and DENIES Defendant's motion.

**I.    BACKGROUND**

      This is a case about whether LTD benefits may be reduced by "other income" when an employee moves his own money from an employer plan to an individual retirement account (IRA). The answer turns on whether the employee "received" the money. Plaintiff was a participant in an LTD plan established by his former employer, Aramco Services Company ("Aramco"), an ERISA-governed employee welfare benefit

plan. Complaint, ECF No. 3. MetLife issued to Aramco the group policy that funds the LTD benefits of the Plan and the incorporated certificate of insurance ("Certificate") that together set forth the conditions and terms of coverage. *Id.* at ¶ 4. Under "Disability Income Insurance: Long Term Benefits," the Plan states:

> "If You become Disabled while insured…When We receive Proof, We will review the claim. If We approve the claim, We will pay the Monthly Benefit up to the Maximum Benefit Period shown in the SCHEDULE OF BENEFITS, subject to the DATE THE BENEFIT PAYMENTS END section."

Decl. of Tim Suter, ECF No. 19-2 ¶ 2.

Under the heading "DISABILITY INCOME INSURANCE; INCOME WHICH WILL REDUCE YOUR DISABILITY BENEFIT," the Plan states:

> "We will reduce Your Disability benefit by the amount of all Other Income. Other Income includes the following:
>
> Any income *received* for disability or retirement under the Policyholder's Retirement Plan, to the extent that it can be attributed to the Policyholder's contributions . . . ."

ECF No. 19-2, Ex. A at 34 (emphasis added).

The Plan also specifies income which will NOT reduce a recipient's disability benefit.

> "We will not reduce Your Disability benefit to less than the Minimum Benefit shown in the SCHEDULE OF BENEFITS, or by . . . amounts rolled over to a tax qualified plan unless subsequently *received* by You while You are receiving benefit payments."

*Id.* at 36 (emphasis added). The Plan further includes a component allowing MetLife to seek recovery for any amounts overpaid to a recipient. *Id.* at 44-45.

Plaintiff ceased working on March 2, 2016 and has been receiving LTD benefits under the policy since September 3, 2016. Complaint, ECF No. 1 ¶ 8. The parties do not dispute Plaintiff's entitlement to LTD benefits. In May 2018, Plaintiff sought to rollover his Aramco Retirement Income Plan ("RIP") benefits. In response, Aramco wrote an email to MetLife stating, "The RIP is a defined benefit plan. [Plaintiff] elected to receive

1  his entire benefit as a lump sum rollover in the amount of $301,301.28. This benefit was
2  rolled over to the Saudi Aramco Savings Plan in June 2017. He does not have any
3  employee contributions in the plan." AR 452. A MetLife representative confirmed via
4  email that this rollover would not result in an offset of Plaintiff's LTD benefits as "the
5  entire amount was directly rolled into a tax qualified plan [so] it is not considered income
6  that would reduce [Plaintiff's] disability benefit." AR 368.

7   In December 2018, Plaintiff rolled the money from his Saudi Aramco Saving Plan
8  account into a personal Vanguard IRA. AR 15. This was done by a trustee-to-trustee
9  transfer. In September 2020, Aramco wrote to MetLife: "The participant [Plaintiff]
10 rolled over his RIP benefit in the amount of $301,301.28 to his Saudi Aramco Savings
11 Plan administered by Vanguard. This amount updated on 6/15/2017. The participant
12 then closed his Vanguard account on 12/14/2018 totaling $671,939.98 (portion of this
13 money was his RIP rollover and the remainder was his Saudi Aramco Savings
14 Plan/401k). Out of the $671,939.98 only $658,862.74 was rolled over to a personal IRA
15 and the after tax [amount] of $13,077.24 was paid out to the participant via check. We do
16 not know what he has done with the money that was rolled over to his Vanguard IRA.
17 Nonetheless, he has took [sic] his RIP benefit in June 2017 and closed his Vanguard
18 account in December of 2018. As a result, an offset must be applied to my
19 understanding." AR 290-91. In October 2020, Plaintiff received a letter from MetLife
20 stating that as a result of other income as defined by the Plan, there was a required
21 overpayment offset that must be repaid to MetLife in the amount of $23,944.61. AR 277.
22 In addition to recouping this overpayment, Plaintiff's monthly benefit would be reduced
23 by $1,162.36 per month. *Id.* Plaintiff subsequently appealed this offset determination
24 which was denied by Defendant in April 2021. AR 2-4. This suit followed.

25 **II.    LEGAL STANDARD**

26  Summary judgment is appropriate where "the movant shows that there is no
27 genuine dispute as to any material fact and the movant is entitled to judgment as a matter
28 of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). A fact is material if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence, viewed in light most favorable to the non-moving party, "is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The party seeking to defeat summary judgment must come forward with affirmative evidence from which a reasonable jury could render a verdict in that party's favor. *Id.* at 252. However, the nonmoving party's mere allegation that factual disputes exist between the parties will not defeat an otherwise properly supported motion for summary judgment. *See* Fed. R. Civ. P. 56(c); *see also Phytelligence, Inc. v. Washington State Univ.*, 973 F.3d 1354, 1364 (Fed. Cir. 2020) ("Mere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (quoting *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996)). Additionally, while the Court will draw all reasonable inferences in the non-moving party's favor and believe the evidence of the non-moving party, the Court will not draw unreasonable inferences and cannot believe evidence that does not exist. *Cf. Anderson*, 477 U.S. at 255.

The interpretation of an ERISA plan in governed by federal common law. *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990). Courts must "interpret terms in ERISA insurance policies 'in an ordinary and popular sense as would a [person] of average intelligence and experience.'" *Id.* (citing *Allstate Insurance Co. v. Ellison*, 757 F.2d 1042, 1044 (9th Cir. 1985)). A court will "not artificially create ambiguity where none exists." *Id.* "If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy." *Id.* An exclusion in an ERISA plan must be "clear, plain, and conspicuous." *Saltarelli v. Bob Baker Grp. Med. Trust*, 35 F.3d 382, 387 (9th Cir. 1994). If the language of the exclusion does not negate the insured's "objectively reasonable expectations of coverage," the exclusion is unenforceable. *Id.*

## III. ANALYSIS

### a. Plaintiff's Entitlement to Benefits

While the record is replete with a rather robust factual account of the back-and-forth communications between the parties, this case is entirely about the meaning of the word "received." There is no dispute that Plaintiff moved his money from a company retirement account to an individual Vanguard IRA. The dispute is whether, in the process of arranging this transfer, he "received." Plaintiff argues that it was a trustee-to-trustee transfer and that he did not actually receive any money; rather it was being held in a separate account no different than the previous Vanguard account. Since he is not collecting from the account, he argues he did not receive, and is not receiving, money that would result in an offset of his LTD. Defendant argues that Plaintiff exercised control over the funds, thus receiving them, and that the account into which the money was rolled over was not listed as an account under the Plan that would not result in an offset of Plaintiff's LTD benefits.

Plaintiff argues the Ninth Circuit case of *Blankenship v. Liberty Life Assurance Company of Boston* (486 F.3d 620 (9th Cir. 2007)) controls. Defendant argues that the facts of *Blankenship* are not congruous with the present case, because the LTD plan language was not the same, and thus is not controlling. Def.'s Opp'n, ECF No. 21 at 5. This Court finds the facts of this case similar to *Blankenship* and, based on the Ninth Circuit's guidance, concludes judgment is warranted for the Plaintiff.

In *Blankenship*, the Ninth Circuit dealt with what the meaning of "receives" under the parties' plan. Just like this case, Blankenship rolled his retirement benefits into a Vanguard IRA. 486 F.3d at 623. The plan language in *Blankenship* also included deductions for benefits the insured "receives" under the plan. Under that plan, the Ninth Circuit ultimately held that since the term "receives" was not defined in the plan, when considered in context, it was ambiguous. The court explained:

> "We begin by recognizing the term "receives" is not defined by the Disability Plan. On appeal, both parties accept the term "receive" to mean "to take into possession or control," with Blankenship focusing on the possession aspect,

>arguing that it means "to accept custody of; collect." However, a definition of receipt based on possession and one based on control may lead to two separate outcomes. Thus, when considered in the context of the Disability Plan, the term "receives" is ambiguous. We therefore apply the rule of *contra proferentem,* and we conclude that it supports the district court's determination."

*Id.* at 624-25. Under the doctrine of *contra proferentem*, "if after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted." *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990).

The court in *Blankenship* addressed the similarities between an IRA and an employer tax-qualified account, focusing on the nature of the transfer (trustee-to-trustee) and the limitations of the actions that may be taken in order to keep the tax benefits of an IRA. "Blankenship elected to have the retirement funds directly rolled over into his Vanguard IRA. We hold that, under these circumstances, Blankenship did not obtain possession of his retirement funds. We base this determination on Vanguard's status as a trustee under the IRC and the fact that Blankenship's funds were transferred from KPMG to his Vanguard IRA through a trustee-to-trustee transfer. *See* 26 U.S.C. §§ 401(a)(31)(A), 402(e)(6), 408(a)." *Blankenship* 486 F.3d 620, 625 (9th Cir. 2007) (footnote omitted).

The court then distinguishes between Vanguard's roles as a mere agent (in which the money would be "received") and as a trustee.

>"In our view, however, if Vanguard is properly characterized as a trustee, the funds are no more in Blankenship's possession than they were before the transfer, and possession would be gained only at the time the funds were withdrawn from the IRA. In the latter circumstance, the transfer of funds to Vanguard would not constitute actual receipt within the meaning of the Disability Plan . . . . The custodian, acting as a trustee, must ensure that contributions to the account are made in cash; that the contributions not exceed the amount the individual is permitted to contribute each year; that the funds not be commingled with other property except in a common trust or investment fund; that the funds not be invested in life insurance contracts; and

> that the interest of an individual in the balance of his or her account be nonforfeitable. It is compliance with these requirements that establishes the custodian of an IRA as a trustee."

*Id.* at 626 (citations omitted).

Defendant attempts to distinguish *Blankenship* in two ways, neither of which are availing. First, Defendant argues the plan language in *Blankenship* "did not contain any offset exception for rollovers into tax qualified plans, like the Plan at issue here." Def.'s Opp'n, ECF No. 21 at 6. Defendant points out the specifics of language used in the Plan that will not result in an offset and ("amounts rolled over to a tax qualified plan unless subsequently received by You while You are receiving benefit payments") and argues that the Plan in this case sufficiently differentiates between "tax qualified plans" which are exempt from offset, versus rollovers to non-tax qualified plans, which are not exempt. *Id.* at 6-7.

Defendant's focus on the juxtaposition of "tax qualified plan" to "IRA" does not alleviate the ambiguity of the word "received." First, there are many tax benefits associated with IRA's that don't necessarily indicate to a beneficiary that an IRA would not be categorized as a "tax qualified plan." *See Blankenship* at 626. This Court also finds persuasive Plaintiff's argument that because "tax qualified plan" is not defined to mean ERISA qualified plan, it must be construed to mean any plan which an employee could rollover benefits without tax consequences. "If [Defendant] intended to incorporate ERISA requirements into the policy or mandate a rollover to another employer provided plan, it should have - - and could have - - done so. But it didn't. The policy does *not* incorporate IRC criteria." Pl.'s Mot. Summ. J., ECF No. 18-1 at 28 (emphasis in original). With that context, a reasonable interpretation of the Plan could remove *any* plan with special tax treatment plan from offset provisions. The Court is not deciding that either side's interpretation of the offset and rollover language is necessarily correct, but rather acknowledging the ambiguity that exists.

Even MetLife personnel believed the transfer did not result in an offset at the time. In May 2020, a MetLife Senior Long Term Disability Specialist wrote an email to

Aramco regarding Plaintiff's rollover stating, "I also looked into the pension information that you previously provided. Because the entire amount was directly rolled into a tax qualified plan, it is not considered income that would reduce his disability benefit." AR 368. MetLife's Long Term Disability Unit Leader responded to an Aramco query about a potential offset of Plaintiff's LTD benefits: "Based on the information we received[,] [Plaintiff] received his RIP in a Lump Sum and this was immediately rolled over to a tax qualified plan. The email we received from you [] indicated that he received this in a lump sum and did roll it over. If [Plaintiff] was receiving his annuity benefit monthly then yes it would have been an offset." AR 294-95. Defendant's argument that there is no ambiguity in the Plan is belied by their own employees.

    Defendant also attempts to distinguish *Blankenship* by pointing out that no extrinsic evidence was considered in that case to resolve the ambiguity and that, if considered here, the Court must necessarily conclude that the term "received" has a clear meaning. Def.'s Opp'n at 8. First, the parties dispute whether the Court can consider extrinsic evidence in analyzing the Plan. Here, the Court finds the term "received" is ambiguous. In this situation, the Court looks to the insured's objectively "reasonable expectations" (*Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 904-05 (9th Cir. 2009)) and/or extrinsic evidence regarding the contract's terms. *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187, 1194 (9th Cir. 1996), *on reh'g en banc*, 120 F.3d 1006 (9th Cir. 1997). A reviewing court will then only apply the doctrine of *contra proferentem* if the ambiguity persists after this review. *Id.* at 1194. This Court will review the extrinsic evidence in an effort to resolve the ambiguity of "received."

    Even this review of the extrinsic documents does not resolve the ambiguity, though. Many of these documents continue to use the word "receive," but do nothing to define it or clarify the parties' intent from the Plan. Plaintiff signed a "Benefit Election Form" stating he acknowledged:

> "I understand that the entire amount of my distribution will be rolled over into the IRA or qualified plan indicated below. Please refer to the Special Tax Notice Regarding Plan Payments for additional information . . . I certify that

> the recipient plan identified below is an IRA or other eligible retirement plan as described in the Special Tax Notice Regarding Plan Payments provided."

AR 253. The juxtaposition of "IRA or other eligible retirement plan" indicates that the IRA is an eligible plan into which Plaintiff could rollover his account without tax penalty, and thus would not be subject to offset from his LTD benefits. The drafting is ambiguous at best.

Defendant also points to a Vanguard Disclosure Statement provided to Plaintiff.

> "If you receive an "eligible rollover distribution" from an "eligible employer plan," other than a designated Roth account, you may make a tax-free rollover contribution of the distribution to a Vanguard traditional IRA. An "eligible employer plan" includes a plan qualified under section 401(a) of the Code (including a 401(k), pension, profit-sharing, defined benefit, or stock bonus plan), a governmental 457 plan, a 403(a) annuity plan, or a 403(b) plan . . . . If you will be entitled to receive an eligible rollover distribution from an eligible employer plan, you may elect to have the plan roll over all or any part of your distribution directly to your Vanguard traditional IRA as a tax-free rollover contribution on your behalf. If you elect this direct rollover option, no federal income taxes will be withheld from your distribution to the extent it is transferred directly to your Vanguard traditional IRA."

AR 30. While this disclosure uses the word "receive," it in no way clarifies what that means any more than did the language of the Plan. If anything, the language indicates rolling over the money to an IRA would have no impact on how the funds were treated for tax purposes, and certainly does not indicate it would change the nature of the money as to create an LTD offset.

Based on the preceding, the inquiry is complete and this Court need not address Defendant's further arguments. The Court applies *contra proferentem* and finds the language "received" in the Plan to mean when the Plaintiff actually receives distributions from the IRA. Absent these distributions, any offsets by the Defendant are contrary to the terms of the Parties' agreement.

### b. Prejudgment Interest

A district court may award prejudgment interest on an award of ERISA benefits at its discretion. *See*, *e.g.*, *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th

Cir. 2001); *Grosz–Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1163–64 (9th Cir. 2001); *Blanton v. Anzalone*, 813 F.2d 1574, 1575 (9th Cir. 1987).  Generally, "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate."  *Grosz–Salomon*, 237 F.3d at 1164 (quoting *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1391 (9th Cir.1994)).  "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Blanton*, 813 F.2d at 1576 (holding that district court abused its discretion by awarding, on an ERISA award, a prejudgment interest rate below the Treasury bill rate without making a finding as to the equities which justified the departure) (citations omitted).  The court may compensate a plaintiff for "the losses he incurred as a result of [the defendant's] nonpayment of benefits."  *Dishman*, 269 F.3d at 988 (holding that the district court abused its discretion in awarding a 16 percent prejudgment interest rate on an ERISA award—double the rate of return on the defendant's investment portfolio—because "[p]rejudgment interest is an element of compensation, not a penalty").

In *Blankenship*, the Court deviated from the standard Treasury bill rate and awarded Blankenship a 10.01 percent rate.  486 F.3d at 628.  There, the "substantial evidence" was in the form of Blankenship's declaration that as a result of non-payment of benefits, he was forced to replace the money he would have otherwise received with his own personal funds that would have otherwise been invested in a Vanguard account. *Id.*  Here, though, there is no evidence of an appropriate rate of return outside of Plaintiff's declaration stating the account had a 5.25% rate since he opened it.  This is not "substantial evidence" on which this Court can rely to award a rate above the normal Treasury bill rate.  Accordingly, the Court awards Plaintiff 3.016% interest rate, the current one-week average of the Treasury bill rate.

## IV. CONCLUSION

For the foregoing reason, the Court orders as follows:

1) Plaintiff's Motion for Summary Judgment is granted.
2) Defendant's Motion for Summary Judgment is denied.
3) Plaintiff does not "receive" the income from his Vanguard IRA account, and Defendant cannot offset any income from Plaintiff's LTD benefits, until Plaintiff takes contributions therefrom.
4) Defendant shall repay Plaintiff the money it claimed for overpayment ($23,944.61) and the money withheld due to the claimed offset ($1,162.36 per month from March 2021 through present day).
5) Plaintiff is entitled to recover the amounts listed in item 4 above at the current Treasury bill rate of 3.016% per annum.
    a. Plaintiff's interest rate on the withheld overpayment is calculated from the time the overpayment was taken by Defendant.
    b. Plaintiff's interest rate on the offset is calculated from the first day of the month following when the payment was due.
6) The Court declines to rule on the Plaintiff's request for attorneys' fees and costs absent further briefing on the matter.
7) Plaintiff is ORDERED to submit to this Court within 21 days the following:
    a. The total amount of benefits owed under item 4.
    b. The total amount of interest owed under item 5.
    c. Any motion for attorneys' fees and costs, including supporting documentation.

**IT IS SO ORDERED.**

Dated: July 14, 2022

_____
**HON. ROGER T. BENITEZ**
United States District Judge